UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTÔNIO PEREIRA ASSOCIATION & PASÁRGADA ASSOCIATION, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MERRILL LYNCH, PIERCE, FENNER & SMITH INC., BARCLAYS CAPITAL, INC., CITIBANK INC., CITIGROUP GLOBAL MARKETS, INC., JP MORGAN, JP MORGAN SECURITIES LLC.,<br><br>Defendants. | Case No.: 1:23-cv-08160-JCP<br>[rel.: 1:23-cv-08139-JCP]<br><br>**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER *FORUM NON CONVENIENS*** |

**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS UNDER *FORUM NON CONVENIENS***

**I.   INTRODUCTION**

Plaintiffs Antônio Pereira Association and Pasárgada Association in conjunction with plaintiff in a separate action (collectively, "Plaintiffs"), brought this proposed class action[1] against Defendants, a group of financial institutions based in or conducting business in this District,[2]

---

[1] Plaintiff Antônio Pereira Association's and Plaintiff Pasárgada Association's claims in this Action largely track the claims of the plaintiffs in the related action also pending before this Court, *City of Ouro Preto v. Merrill Lynch, Pierce, Fenner & Smith Inc., et al.*, No. 1:23-cv-8139. Because these related actions have not yet been consolidated, Plaintiff in this case and the plaintiffs in the related action file separate responses to Defendants' motions. Citations to filings, including to the operative complaints and to Defendants' briefing, will be to those filings in the case in which they were filed, unless otherwise noted.

[2] Defendants Merrill Lynch, Pierce, Fenner & Smith Inc.; Barclays Capital, Inc., Citibank Inc., Citigroup Global Markets, Inc., JP Morgan, JP Morgan Securities LLC (collectively,

1

alleging "indirect polluter" damages under Brazilian law for environmental disasters (and ongoing substantial risks) related to mines operated by Vale, S.A. ("Vale")—which Defendants funded and in which they invested. Vale, a Brazilian corporation, operates mines throughout Brazil, including in the "Iron Quadrangle," where Plaintiffs are located.

Defendants moved to dismiss Plaintiffs' claims in both actions under the *forum non conveniens* doctrine, claiming that Brazil—not this Court—is a more convenient forum for adjudicating the claim. ECF Nos. 84-85. Plaintiffs responded, explaining that the Court should defer to their choice to proceed in this forum and that Brazil is not an adequate alternative for adjudicating the claim for a plethora of important reasons. ECF No. 93. Defendants submitted a reply raising an entirely new argument, asserting that a recently-filed petition before the Brazilian Supreme Court could potentially require Plaintiff City of Ouro Preto to drop its lawsuit. ECF No. 95 at 18-19, 19 n.17. Plaintiffs now respond to this newly raised argument. *See* ECF No. 101 (permitting Plaintiff to file a sur-reply).

Defendants' new argument cites the Brazilian legal petition, a "Motion for Breach of Fundamental Precept" brought on June 10, 2024, by the Brazilian Mining Association—the *Instituto Brasileiro de Mineração* ("IBRAM"). *See* Mot. for Breach of Fundamental Precept, ECF No. 96-2 (the "IBRAM petition"), at 1, 52. None of the Defendants is a member of IBRAM. However, one notable player on IBRAM's board has a deep connection to these actions and to other pending litigation in the United Kingdom—Vale.[3] With a firm connection to this case due to

---

"Defendants") are large financial institutions who maintain substantial business and operations in New York and in this District. Defendant Barclays Capital, Inc. is headquartered in London with multiple offices in New York. Compl., ECF No. 1, ¶ 30. All other Defendants are headquartered in New York. *Id.* ¶¶ 29, 31-32.

[3] Administrative Board, https://ibram.org.br/en/administrative-board (last accessed July 16, 2024) (including multiple members of Vale sitting on IBRAM's administrative board). With six seats on

2

the acceptance of Defendants' underlying funding for its mining operations in the Iron Quadrangle, Vale—and Defendants—would have much to gain by petitioning the Brazilian Supreme Court to hold that Brazilian municipalities may not bring claims in foreign, more adequate jurisdictions. Indeed, even if this Court refused to grant Defendants' motion to dismiss under *forum non conveniens*,[4] Defendants (through Vale and IBRAM) could, through this petition, still attempt to uproot this litigation and avoid liability in the forum of Plaintiffs' choosing, which is more adequate and ensures a more expedient resolution.

Defendants rely on this petition to seek dismissal. ECF No. 95, at 18-19, 19 n.17. As explained by Professor Salama, Plaintiffs' Brazilian law expert, there is little chance this petition would be granted. Even so, it presents no basis for granting Defendants' Motion, because if the petition were granted, only the City of Ouro Preto case would be paused (or no longer prosecuted); the Association case would remain. If anything, this petition illustrates the desperate lengths to which Vale—and, by extension, Defendants—may go to undermine this Court's jurisdiction and power to consider the claims before it. The Court should not abide such "lawfare." As explained more fully below, the IBRAM petition provides no meaningful basis or support for granting Defendants' motion. The Court should continue to maintain this litigation in this District.

---

IBRAM's administrative board—four more seats than any other company sitting on the board—Vale appears to maintain significant power over IBRAM.

[4] Plaintiffs note that the IBRAM petition seeks only to prevent municipality plaintiffs from bringing claims in foreign jurisdictions (and actively ending ongoing claims by municipality plaintiffs). This would impact Plaintiff City of Ouro Preto, but it would *not* impact Plaintiffs Antônio Pereira Association and Pasárgada Association. As non-municipal plaintiffs, their claims would remain, even if the Brazilian Supreme Court ruled in IBRAM's favor.

## II.     ARGUMENT

### A.     The IBRAM Petition Is Meritless and, in Any Event, Is Unlikely to Impact Plaintiffs' Claims.

Professor Salama has reviewed the IBRAM petition and found it to be meritless. Second Declaration of Professor Bruno Meyerhof Salama ("Second Salama Decl."), at 4-5 (attached to the Declaration of Alex R. Straus in Support of Plaintiffs' Sur-Reply in Opposition to Defendants' Motion to Dismiss Under *Forum Non Conveniens*). As Professor Salama explains, IBRAM argues that "Brazilian municipalities lack sovereignty to represent the Brazilian state before foreign governments and state entities." *Id.* at 2. The underlying argument suggests that Plaintiff City of Ouro Preto has "unwarrantedly renounced Brazilian sovereignty" by bringing claims on behalf of its citizens against Defendants for their funding of Vale's mining operations, which inevitably caused serious environmental damages to the municipality and its citizens (and similarly situated municipalities and their citizens). *Id.*

But IBRAM's arguments do not track Plaintiff's claims here. As Professor Salama notes, Plaintiff City of Ouro Preto is "not representing the Brazilian state" in this litigation but instead "[Plaintiff City of Ouro Preto] is representing [its and its citizens'] local interests to receive damages." *Id.* at 2-3. Under established Brazilian law, although Plaintiff City of Ouro Preto could not sue for relief that would effectively take legislative action in Brazil or could be considered diplomatic in nature—Plaintiff seeks no such relief here. *See id.* at 3. Brazilian law permits municipalities to sue abroad "when active in a commercial or private capacity, such as . . . claiming damages." *id.*, as Plaintiffs have done here.

If anything, Defendants' own expert, Justice Francisco Rezek, agreed with this position—at least when he submitted his initial declaration. He noted that Brazilian law indeed permits

4

municipalities "to sue outside Brazil" under certain circumstances. *See* Declaration of Justice Francisco Rezek, ECF No. 86-1, ¶ 104.[5, 6]

The IBRAM petition is likely to fail for that reason, along with the numerous other reasons Professor Salama details in his Second Declaration. Finding in favor of IBRAM, which would necessitate the termination of certain claims in this Court along with other active litigation around the globe, would upend already established precedent. For example, other municipalities have acted in their interests and on behalf of their citizens in entering into forum selection clauses recognizing foreign courts as the preferred fora, as well as bringing claims for damages in the United States against United States defendants (notably without authorization). Salama Second Decl. at 4 nn.2-3; *see also* Salama Decl., ECF No. 94-1, § 3.4; *id.* at 7-8 nn. 10, 12, 14. But perhaps most importantly, the Brazilian Federal Supreme Court—the *exact same court where IBRAM has brought its petition*—recently considered these sorts of questions of municipal sovereignty and defined a clear difference between actions a government may take and a municipality's "acts of management" in a quasi-private activity. Second Salama Decl. at 3 n.1; *see also* Salama Decl. at 9 n.15.

---

[5] Justice Rezek's initial declaration *never* took the position that municipalities could not sue for damages abroad. Rather, he asserted that, under his interpretation of Brazilian law, authorization from the Brazilian Federal Senate would be required. ECF No. 86-1, ¶ 106 (noting that with such authorization, the municipalities would have authority to sue in the United States). Professor Salama agrees with Justice Rezek's premise that municipalities can sue in foreign courts for damages, but he explains that under these circumstances authorization by the Federal Senate is *not* required. Declaration of Professor Bruno Meyerhof Salama ("Salama Decl."), ECF No. 94-1, § 3.4 (citing cases and examples). Indeed, Professor Salama establishes that Justice Rezek's assertion that authorization would be required is based on a faulty factual premise, providing examples of other cases in which Brazilian municipalities have sued abroad—a position affirmed by the Brazilian Federal Supreme Court in 2021. *Id.*

[6] To the extent the Court finds that authorization would be required—which is unnecessary and is a position Plaintiffs do not concede—such authorization could be obtained and does not establish a basis for granting Defendants' motion.

Because Plaintiff City of Ouro Preto is suing for damages on its own behalf (in service to the interests of its citizens) and is seeking to represent other municipalities for the same claims and damages, there is little reason to think that the Brazilian Federal Supreme Court will, only now, choose to prevent a municipality from undertaking these sorts of quasi-private activities, particularly where they have long been permitted under Brazilian law. Such a sea change in Brazilian law is unlikely. The petition presents no basis for depriving this Court of jurisdiction.

### B.   The IBRAM Petition Will Take Substantial Time to Resolve.

Beyond the dubious prospect of success, the IBRAM petition is likely to take *years* to litigate. As Professor Salama notes, such petitions can take *more than five years to be decided*, with similar petitions taking more than double that amount of time. Second Salama Decl. at 4, 4 nn.4-6. This exemplifies the precise point Professor Salama previously made—that *significant* delays are endemic in the Brazilian court system, at all levels. *See, e.g.*, Salama Decl., § 4.2.

Defendants may assert in further reply that the IBRAM petition should give the Court pause in allowing this litigation to proceed here out of efficiency concerns because, if the petition is granted, Plaintiffs would be required to stop pursuing their claims here after years of litigation in the interim. This is a red herring. First, as already explained, it is unlikely that the IBRAM petition will succeed in changing long-established Brazilian law that permits municipalities from suing in a foreign jurisdiction. But even if successful, the IBRAM petition would impact *only* Plaintiff City of Ouro Preto's case; the Association Plaintiffs' claims are unaffected by the IBRAM petition in any respect. Thus, there is little reason to consider, as Defendants likely will invite the Court, how the IBRAM petition may cause judicial inefficiencies in this litigation. Indeed, both cases have

been related,[7] discovery will most efficiently occur simultaneously and likely result in substantially the same production of evidence by Defendants to all Plaintiffs. The Court should not consider any potential inefficiencies brought on by this latest petition, as it will not cause serious delays in this Court—a problem that certainly remains if this litigation is forced to resume in Brazil.

        **C.     The Timing of IBRAM's Petition Is Dubious at Best.**

The timing of IBRAM's petition is certainly questionable. Plaintiffs notified Defendants of their intent to file suit on July 13, 2023. Demand Letter (attached to the Declaration of Alex R. Straus in Support of Plaintiffs' Sur-Reply in Opposition to Defendants' Motion to Dismiss Under *Forum Non Conveniens*). Plaintiffs filed suit on September 14, 2023. *See* Compl., ECF No. 1. Defendants have known about Plaintiffs' claims for more than a year—including the fact that their claims centered on Defendants' funding of Vale's operations in the Iron Quadrangle. If Defendants (or Vale) wished to seek judicial review of a Brazilian municipality plaintiff's right to bring a claim against a foreign defendant in a foreign jurisdiction, they could have done so earlier. Instead, the IBRAM petition was filed on June 10, 2024, ten months after this litigation started. ECF No. 96-2, at 52. Worse, still, the IBRAM petition was filed only *after* Plaintiffs filed their Opposition to Defendants' Motion to Dismiss on May 22, 2024. ECF No. 93.

Given the timing of the IBRAM petition, it strains credulity for Defendants to dispute their involvement in the petition. And perhaps most obviously, the relief sought in the IBRAM petition aligns perfectly with what Defendants seek here: escaping this Court's jurisdiction and sending these claims to Brazil for adjudication in what they perceive to be a friendlier forum.

---

[7] *See* September 21, 2023 docket entry in *Antonio Pereira Association, et al. v. Merrill Lynch, Pierce, Fenner & Smith Inc., et al.*, No. 1:23-cv-8160, in which the Court "accepted [the cases] as related."

7

Worse still, Vale is currently embroiled in separate litigation—notably for its operational failures leading to the 2015 Fundao Dam collapse in Samarco, Brazil, that killed 19 people and caused substantial environmental damage—originally brought in the United Kingdom and the Netherlands in 2018. *See* ECF No. 96-2, ¶ 2; *see also* Second Salama Decl. at 4-5.[8] IBRAM could have filed a petition in 2018, or any intervening year. But it did not. Instead, IBRAM (and Vale) waited six years. *See* Second Salama Decl. at 5. To state that the timing is dubious puts it mildly.

It is no coincidence that *every* foreign case mentioned in the IBRAM petition involves Vale and its operational failures, which led to *multiple* dam collapses, numerous deaths, and countless environmental damages. *Id.* ¶ 2; *see also id.* at 53 (listing cases in the United Kingdom, the Netherlands, the United States, and Germany regarding various dam collapses). When afforded every opportunity to seek legal redress and prevent the "manifest[] unconstitutional interpretation" by municipalities suing one of its members, IBRAM (or Vale itself) chose not to petition the Brazilian Federal Supreme Court. That is, until someone *other* than Vale was sued. Once Plaintiffs brought their claims against indirect polluters under Brazil's lender liability law, only then did the wheels of "justice" begin to turn—seemingly out of nowhere. Suddenly, Vale and IBRAM held a brand new view on the propriety of Brazilian municipalities suing in a foreign jurisdiction, after turning a blind eye to this issue for *years*.

To put it mildly, this appears to be lawfare—using an unprincipled legal theory to assail Plaintiffs' claims here, for no claimed reason other than to correct a "wrong" in Brazilian constitutional interpretation. Perhaps Defendants had no part in suggesting to Vale—who would

---

[8]  *See also* https://www.reuters.com/world/claimants-deadly-mariana-dam-collapse-file-injunction-against-bhp-vale-2024-06-27 (last accessed July 16, 2024); https://www.reuters.com/markets/commodities/bhp-vale-reach-agreement-over-2015-brazil-dam-collapse-proceeding-uk-2024-07-12 (last accessed July 16, 2024).

be liable for indemnifying Defendants—that Vale, through IBRAM, move for a sea change in longstanding Brazilian procedure. Perhaps Vale simply overlooked this "problem" for years and years and years, until *just* after Plaintiffs filed their Opposition to Defendants' Motion in this litigation. Perhaps. But it defies belief.

As Professor Salama succinctly puts it, "[t]he timing of the filing suggests that [the IBRAM petition] is part of Defendants' legal strategy" in these cases. Second Salama Decl. at 5. But the IBRAM petition ultimately seeks to assail not only Plaintiffs' claims, but this Court's authority to fully consider the *forum non conveniens* question. The Court should afford no weight to that filing.

### D.   The Association Plaintiffs' Claims Are Unaffected by the IBRAM Petition.

As explained, the IBRAM petition seeks to modify Brazilian law to disallow *municipality plaintiffs* from bringing claims in foreign jurisdictions, such as the United States. *See generally* ECF No. 96-2. While Plaintiffs maintain that the petition is meritless and unlikely to succeed, even if the municipality Plaintiff in the related *City of Ouro Preto* case, No. 23-cv-8139, was disallowed from continuing to prosecute its claims, Plaintiffs in this action would still be permitted to litigate their claims—and this District would be the most appropriate and adequate forum for doing so. *See* Second Salama Decl. at 4.

## III.   CONCLUSION

For the reasons stated above, and for the reasons previously explained in Plaintiffs' Response in Opposition, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss Under *Forum Non Conveniens* and maintain both Actions in this Court.

Dated: July 16, 2024

    Respectfully Submitted,

    **CITY OF OURO PRETO**, on behalf of itself and all others similarly situated

By:    */s/ Alex R. Straus*
    Alex R. Straus (Fed. Bar. No. 5175491)
    **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
    280 South Beverly Drive, PH Suite
    Beverly Hills, CA 90212
    T: (866) 252-0878
    astraus@milberg.com

    Roy L. Mason (Admitted *pro hac vice*)
    Of Counsel
    **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
    100 Garden City Plaza
    Garden City, NY 11530
    T: (866) 252-0878
    rmason@milberg.com

    Glenn Phillips (Admitted *pro hac vice*)
    **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
    1420 Fifth Avenue, Suite 2200
    Seattle, WA 98101
    T: (866) 252-0878
    gphillips@milberg.com

    Greg Coleman (Admitted *pro hac vice*)
    **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
    800 S. Gay Street, Suite 1100
    Knoxville, TN 37929
    T: (866) 252-0878
    gcoleman@milberg.com

## **CERTIFICATE OF SERVICE**

I, Alex R. Straus, certify that on July 16, 2024, I caused the foregoing Plaintiffs' Sur-Reply In Opposition To Defendants' Motion To Dismiss Under *Forum Non Conveniens* to be filed with the Clerk of the Court and served upon all counsel of record via the Court's CM/ECF system.

Dated: July 16, 2024                                    */s/ Alex R. Straus*
                                                                        Alex R. Straus